IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELDON WYATT ESTATE,
BY DIANE VAUGHN, EXECUTOR,
and JOHNNY WYATT,

            Plaintiffs,

vs.                                         No. 09-1140-JTM

TOM VILSACK SECRETARY,
UNITED STATES DEPARTMENT
OF AGRICULTURE,

            Defendant.

## O R D E R

This matter is before the court on the plaintiffs' petition for judicial review of the Farm Service Agency's ("FSA") denial of their request for relief to extend two Conservation Reserve Program ("CRP") contracts in the Re-Enrollments and Extensions ("REX") program. (Dkt. No. 14). The plaintiffs allege that the National Appeal Division's ("NAD") decision was: 1) arbitrary and capricious; 2) not supported by the evidence and 3) based on an erroneous interpretation of the law. The defendant, Secretary of United States Department of Agriculture ("Secretary"), moves this court for an order affirming its decision. (Dkt. No. 15).

Reviews of agency action in the district courts are processed as appeals. *Olenhouse v. Commodity Credit Corp.* 42 F.3d 1560, 1580 (10th Cir.1994). In reviewing the final decision of a federal agency, the court applies the standards set forth in the Administrative Procedure Act, 5 U.S.C. §§ 701-706. The court's scope of review is narrow. *Maier v. EPA,* 114 F.3d 1032, 1039 (10th Cir.), *cert. denied,* 522 U.S. 1014, 118 S.Ct. 599, 139 L.Ed.2d 488 (1997). The standards permit the court to set aside an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law," or is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

In reviewing the agency's decision, the "court is not free to substitute its own judgment for that of the agency, but must instead uphold the agency decision if there is a rational basis for that decision." *Northwest Pipeline Corp. v. Federal Energy Regulatory Comm'n,* 61 F.3d 1479, 1486 (10th Cir.1995). The standard is only whether substantial, not uncontested or incontestable, evidence exists in the record to support the result the agency reached. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The question is whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support" the agency's decision. *Id.; see also Energy West Mining Co. v. Oliver,* 555 F.3d 1211, 1217 (10th Cir.2009).

A court may not overturn an agency decision if the agency "demonstrate[s] that it considered relevant factors and alternatives after a full ventilation of issues and that the choice it made was reasonable based on that consideration." *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1453 (10th Cir.1994). Normally, an agency's action is set aside as arbitrary and capricious only

> if the agency has relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Rapp v. United States Dep't of Treasury,* 52 F.3d 1510, 1515 (10th Cir.1995).

The FSA is part of the United States Department of Agriculture. The CRP authorizes the FSA to enter into contracts with eligible landowners whereby the landowner agrees to remove agricultural land from farm production in exchange for government payments. The contracts require the participants to implement an approved conservation plan and adhere to certain other criteria set

forth in various federal statutes and regulations. *See generally* 16 U.S.C. §§ 3831-3835; 7 C.F.R.§ 1410. At issue in this case is the requirement that all participants subject to a CRP contract must complete REX paperwork by the respective re-enrollment deadlines.

Eldon Wyatt enrolled 70.7 acres in the CRP under Contract No. 272A for the period between October 1, 1997, and September 30, 2007. He also enrolled 118.9 acres in CRP under Contract No. 554A for the period between October 1, 1998, and September 30, 2008. Eldon Wyatt died in October 2005, but the FSA was not informed of his death until April 12, 2006.

Wyatt gave Tom Fitzgerald a durable power of attorney, and designated Fitzgerald as his attorney for the farm programs. Fitzgerald signed the CRP Contracts No. 272A and 554A, and was the point of contact regarding those contracts. Wyatt's will named plaintiff Diane Vaughn executor of the estate. Wyatt's will directed Fitzgerald to give Vaughn advice regarding the operation of the farm and farm programs.

President George W. Bush approved the REX program on August 4, 2004 announcing the administration's commitment to fully enroll 39.2 million acres in the CRP Program. FSA sent REX notification letters to contract holders informing them that they were required to notify their county FSA office of their intent to participate in REX, and pay a compliance review fee. Contract No. 272A, which was set to expire in 2007, had a deadline of April 14, 2006, and Contract No. 554A. which was set to expire in 2008, had a deadline of June 30, 2006. To finalize a REX re-enrollment: 1) the compliance review had to be completed; 2) forms had to be returned to the county FSA office; and 3) the county FSA committee had to approve the re-enrollment. Once all those things were done then a contract would be eligible for final approval. The deadline for final approval of Contract No. 272A, was September 29, 2006, and for Contract No. 554A, was December 29, 2006.

On February 6, 2006, FSA mailed to Fitzgerald the REX notification letter regarding the opportunity to re-enroll Contract No. 272A. The letter stated that the offer had to be accepted, and a compliance review fee submitted by April 14, 2006. On April 7, 2006, FSA mailed to Fitzgerald the REX notification letter regarding the opportunity to re-enroll Contract No. 554A. The letter stated that the offer had to be accepted, and a compliance review fee submitted by June 30, 2006.

Fitzgerald did not respond to the letter, nor speak with Vaughn regarding the letters or the farms. FSA received notification of Wyatt's death on April 12, 2006. On that same date a FSA program technician spoke to plaintiffs' counsel's legal assistant, informing her that the compliance review fee for Contract No. 272A was due on April 14, 2006, and that the compliance review fee for Contract No. 554A was due on June 30, 2006. Plaintiffs' legal counsel ("Counsel") paid the compliance review fee for Contract No. 272A on April 13, 2006, and listed his address on the FSA form that accompanied the compliance review fee check. Counsel's legal assistant instructed the FSA program technician to send all correspondence to Counsel's address from April 2006 to September 2006. The FSA program technician contacted Counsel's office informing him that the compliance review fee for Contract No. 554A had not been received and was due on June 30, 2006. The fee for Contract No. 554A was not received by June 30, 2006.

On August 11, 2006, letters were sent to Counsel's office with instructions on the procedure for placing successors on Wyatt's two CRP contracts, and noted that there was a sixty day deadline. In September 2006, Counsel notified FSA that Vaughn should be contacted regarding the CRP contracts. On September 15, 2006, FSA mailed a letter to Vaughn explaining 1) the steps that would need to be taken to have a successor placed on decedent Wyatt's two CRP contracts; 2) how to complete the REX process on the successor Contract No. 272A, which was Contract No. 272C; and

3) Contract No. 554D, which was the successor contract to Contact 554A was not eligible for REX because the compliance review fee had not been paid.

The September 15, 2006, letter to Vaughn was sent via certified mail. The envelope noted that a reply was required by September 27, 2006. The post office left notices that there was a certified letter that needed to be picked up at the post office at Vaughn's address on September 18, 26, and October 3, 2006. Vaughn never picked up the certified letter from the post office, and it was returned to FSA on October 6, 2006.

The plaintiffs appealed both the termination of the contracts and the effect the termination of the contracts had on the re-enrollment in the REX program. FSA bifurcated the appeal process, first addressing the reinstatement of the contracts, then the inclusion of the contracts in the REX program. The State FSA Committee recommended that Contract Nos. 272A and 554A be reinstated over the County FSA Committee's objection. The State FSA Committee found: 1) Vaughn had relied upon Fitzgerald to advise her regarding the farms; 2) Fitzgerald failed to provide Vaughn any advice regarding the farms; 3) Vaughn had no reason not to succeed to the CRP contracts.

On October 1, 2007, the Deputy Administrator for Farm Programs adopted the State Committee's recommendation. Wyatt's estate filed: 1) paperwork succeeding to Contract Nos. 272C and 554D; 2) paperwork to re-enroll Contracts Nos. 272C and 554D; and 3) paid the REX compliance review fee for Contract No. 554D.

The County FSA Committee issued its final decision on January 9, 2008, denying the plaintiffs' request to enroll Contract Nos. 272C and 554D through the REX program. The County FSA Committee relied on the fact that CRP contract documents for Contract No. 272A had not been filed by the deadline, and the compliance review fee and the CRP contract documents for Contract

No. 554A had not been paid or filed by the deadline. On April 17, 2008, the State FSA Committee affirmed the County FSA Committee's decision.

On October 7, 2008, the NAD hearing officer issued its appeal determination. He found that the FSA did not consider all of the evidence in issuing its decision. Specifically he noted: "both committees acted on . . . [contracts] 272A and 554A. Neither . . . discussed relief to enroll in the REX program [contracts] 272C and 554D. The committees also failed to consider the REX paperwork and compliance fee Appellant filed on the contract in November 2007." (Dkt. No. 8-9 at 2). The NAD hearing officer made the following findings: 1) FSA did not consider facts surrounding Contract Nos. 272C and 554D; 2) FSA did consider facts surround Contract Nos. 272A and 554A; 3) FSA provided proper notice regarding the opportunity to participate in REX by mailing the notification letters to Fitzgerald; 4) Fitzgerald was listed as the Wyatt's agent at the time the REX notification letters were mailed; 5) the NAD officer lacked the authority to grant equitable relief and 6) equitable relief would have to be requested in Director Review.

Plaintiffs subsequently requested Director Review of the NAD decision. On April 14, 2009, the Director issued a decision upholding the NAD's determination. Since the FSA did not appeal the hearing officer's decision that all of the evidence was not considered, that finding was affirmed. However, the Director also found that FSA provided proper notice, and there was a failure to diligently meet the deadlines outlined in the REX notification letters, and plaintiffs did not make a good faith effort to fully comply with the REX rules and guidelines, had not substantially performed, and thus, were not entitled to equitable relief. (Dkt. No. 8-12 at 1-2).

The Court finds that the NAD's final decision was not arbitrary or capricious or unsupported by substantial evidence.

The plaintiffs maintain that FSA did not give proper notice, thereby denying due process. (Dkt. No. 14 at 4). FSA sent notice to Fitzgerald, which was the only person designated for correspondence at the time the letters were sent in February and April 2006. REX notification letters for Contract Nos. 272A and 554A were mailed on February 6, 2006, and April 7, 2006, respectively. The letters detailed the deadlines for submission of compliance review fees for Contract Nos. 272A and 554A. Those two letters were all the notice required by the regulations.

However, the FSA also: 1) called on April 12, 2006, regarding the compliance review due dates of April 14, 2006, and June 30, 2006; 2) called in June 2006, regarding the compliance review fee due date of June 30, 2006; 3) sent a letter on August 11, 2006, regarding the process for succession on Wyatt's CRP contracts; and 4) sent a letter on September 15, 2006, regarding the re-enrollment process and the succession process. FSA sent notice to Fitzgerald, who was the only person designated for correspondence at the time the letters were sent in February and April 2006. Wyatt died in October 2005 but the FSA was not notified until April 12, 2006.

In September 2006, Counsel requested that correspondence go to Vaughn, and FSA complied. On September 15, 2006, the FSA sent notifications via certified mail to Vaughn explaining the steps the Estate would need to take to succeed to Contract No. 272C (the successor contract to 272A) and Contract No. 554D (the successor contract to 554A), and that Contract No.554D was not eligible for REX since the compliance review fee had not been paid. The FSA provided adequate notice of the opportunity to participate in REX.

Next, the plaintiffs allege that "FSA erred in not granting plaintiff equitable relief." (Dkt. No. 14 at 15). The plaintiffs rely on the following in support of their equitable relief assertion: 1) the late filing of CRP documents and payment of compliance review fees for Contract Nos. 272C

7

and 554D entitled them to re-enrollment and extension of those contracts through the REX program; 2) plaintiffs had a good excuse for missing the deadlines; and 3) even if the court believes that the plaintiffs could have done more, the best use of the property at issue is CRP, and the individual who suffers from the plaintiffs' action is the decedent's nephew, who inherited the farm land. (Dkt. No. 14 at 15-18.) The plaintiffs maintain that "[e]quity would demand that the heir not be penalized for actions over which he had no control." (Dkt. No. 15 at 18).

Equitable relief for the failure to fully comply with applicable regulations may be granted if a producer made a good faith effort to fully comply with the program requirements and rendered substantial performance. *See* 7 C.F.R. § 718.304(b).

The court does not find the plaintiffs' equity argument persuasive. As the Secretary correctly points out "[i]t is unfortunate that Fitzgerald did not relay information regarding the REX notices to Vaughn, the executor . . . . However, Fitzgerald's failures do not create an additional obligation on FSA's part, especially when it acted in accordance with its regulations and notices." (Dkt. No. 15 at 10). *See* 7 C.F.R. § 1410.51(b).

Re-enrollments had to be finalized by September 29, 2006, on Contract No. 272A and by December 29, 2006, on Contract No. 554A. The plaintiffs did not get all the REX paperwork filed and fees paid until November 2007. They did not begin the process of succeeding to the contracts until April 2007, well after the deadlines had passed. The court does not find that the plaintiffs made a good faith effort to comply with the program requirements or rendered substantial performance. Despite FSA's repeated attempts to inform plaintiffs of the succession and re-enrollment process, and deadlines, the plaintiffs were at least one year late in filing to succeed to the contracts. On April 12, 2006, Counsel informed FSA that Wyatt had died in October 2005, but did not take steps to

succeed to the contracts until April 2007. A new owner of land under a CRP contract is to succeed to the contract within 60 days of the transfer. *See* 7 C.F.R. 1410.51(b). The plaintiffs were eleven months late on completing the re-enrollment process on Contract No. 554A, and were thirteen months late on Contract No. 272A.

There is no evidence that the plaintiffs made a good faith effort to fully comply with the program requirements or rendered substantial performance, therefore equity does not warrant relief for the plaintiffs' failure to fully comply with applicable regulations.

The plaintiffs' final assertion is that the FSA's decision to reinstate Contract Nos. 272C and 554D, but not allow participation in the REX program, was arbitrary and capricious. (Dkt. No. 14 at 14).

Succession to a CRP contract only requires the successor to adopt the responsibilities under the original CRP contract. This is minor administrative procedure to reflect the successor as the contact point for the FSA, and payment records are updated with the successor's contact information. The contracts at issue here were scheduled to expire in September 2007 and 2008. Wyatt died in October 2005, so at his death one contract had approximately two years remaining, and the other had three years. However it is worth noting that once the plaintiffs finally took the steps to succeed on the contracts, one had approximately one year remaining, and the other had two years remaining.

REX involves much more than the administrative name change procedure for a succession. The REX process is a lengthy one. Initially, the FSA must determine which contracts will be eligible for re-enrollment and extension, as well as the length of the extension. Next, offers have to be produced, coordinated, and conveyed to potential participants. Then review fees must be

9

collected, and compliance reviews must be performed on any property that is considered for re-enrollment and extension. Contract forms and conservation plans must be completed. The process of REX re-enrollment and extensions must fit within the statewide and nationwide scheme of continuing CRP enrollments. The FSA has a maximum allotted acreage and money available for the program, therefore the entire process requires considerable time and coordination for a successful execution.

A court will not substitute its judgment for the agency's, but instead must uphold the agency if there is a rational basis for the decision. *Thomas Brooks Chartered v. Burnett,* 920 F.2d 634, 644 (10th Cir. 1990). "An agency's action will be set aside as unlawful if we are able to discern the agency relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 644.

There is no evidence that the FSA: 1) relied on impermissible factors; 2) entirely failed to consider an import aspect of the problem; 3) offered an explanation contrary to the evidence; or 4) advanced an implausible explanation. The court finds that given the multitude of procedures that must be executed in the REX process, as opposed to the simple administrative change of names on a succession to a CRP, it was rational for the FSA to determine that deadlines and procedures could be waived for the succession, but not for participation in REX. The FSA appropriately applied the agency's regulations with regard to the contracts and the decision was not arbitrary or capricious or against the evidence.

The FSA has articulated a satisfactory explanation for its action, including a rational connection between the facts and the decision rendered. Plaintiffs have failed to meet their burden of proving that the final agency action was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A); *AllCare Home Health, Inc. v. Shalala*, 278 F.3d 1087, 1089 (10th Cir. 2001).

IT IS ACCORDINGLY ORDERED this 27th day of July, 2010, that the plaintiffs' motion (Dkt. No. 14) is hereby denied, and the final decision of the FSA is affirmed.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE